IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUNNY ARIS, *and*
ANIMAL VILLAGE NEW MEXICO,
    Plaintiff,

vs.                                                     No. 17-01247-JTM-SMV

LT. MARY LOU WARD,
    *et al*.,
        Defendants.

MEMORANDUM AND ORDER

      Plaintiffs Sunny Aris and her rescue agency Animal Village New Mexico allege the Dona Ana County Sheriff's office and Animal Control Department published false information about her animal rescue efforts, violating her First Amendment rights. By prior Order, the court dismissed plaintiffs' 42 U.S.C. § 1983 claims against all but one of the defendants. The court denied the motion as to Dona Ana County Public Relations Officer Kelly Jameson. "Although it is a close question," and the allegations in the complaint as to Jameson were "not extensive or detailed," the court concluded that the complaint's allegation that Jameson falsely published information about the animal rescue event was sufficient to withstand a motion to dismiss. (Dkt. 29). Ultimately, the viability of the claims against Jameson would turn on "[t]he nature and content of what the Public Information Officer said" in her public comments. *Id.*

After discovery on the issue, Jameson has now moved for summary judgment on the First Amendment retaliation claim made by plaintiffs. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).

One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The evidence submitted to the court establishes that on October 16, 2015, Sunny Aris contacted Mesilla Valley Regional Dispatch Authority regarding possible animal cruelty at 10830 Starfly Road, reporting numerous dogs in a residence, some being vicious, and injuries to the dogs and livestock. Aris asked Lieutenant Mary Lou Ward for help in removing the dogs.

Because Animal Control did not have the manpower, Ward asked Sergeant Jeremy Hash if the Sheriff's office could send an investigator to confirm the report of animal cruelty. Hash told Jameson of the situation in anticipation of the local news media contacting her, and went to the scene where he saw six dogs. He was unable to see anything that would allow him to enter the property without a warrant.

Ward spoke with Aris a second time on October 16, 2015. Aris told Ward that she had removed 28 animals from the property. When Hash contacted Ward to report that he found only six dogs, Ward told him that Aris had removed 28 animals.

Hash then contacted Jameson to provide an update and explained that by removing the animals from the property, Aris had taken the evidence needed to conduct an investigation.

The Sheriff's office did not investigate Aris for her actions in removing the dogs, and Aris was not prosecuted for any crimes related to the rescue.

In her position as the Public Information Officer for the Sheriff's office, Jameson

depends on officers to provide the information needed in discussing issues with the news media.

According to Jameson's interview log, she spoke with KVIA-TV, an El Paso, Texas ABC affiliate, on October 19, 2015 and October 22, 2015 regarding the "Starfly animal abuse allegations." Tom Scott, Channel 7 (KVIA-ABC) contacted Jameson after receiving a call from Aris alleging the Sheriff's office failed to investigate, and if not for her, the animals would have died. Defendant Jameson submitted a copy of the news report aired by KVIA-TV on October 20, 2015. Most of the report shows Aris and reports her comments uncritically. Jameson appears briefly on camera, and offers only the mildest criticism of Aris, saying, ""The reporting party should have stayed on site to relay that information to the deputy so we could begin a proper investigation."

During her interviews, Jameson told Scott it was not an animal cruelty case, and never indicated that Aris was being investigated by the sheriffs office or that felony charges were being considered. The reported concluded with the statement: "In the meantime, Aris won't be charged for taking those animals because, once again, she tells us the property owner did give her permission to take them."

In response to Jameson's motion, the plaintiffs offer the suggestion that another televised interview occurred, based on the affidavits of Bill and Jackie Johnston. Both affidavits merely repeat verbatim the conclusory statement from the complaint that Jameson said that Aris "removed evidence from a crime scene, and that she could be facing felony charges." Notably, the plaintiffs have not offered a copy of the actual news report.

4

A claim of First Amendment retaliation requires proof that the (1) plaintiff "was engaged in constitutionally protected activity," (2) the defendant's acts caused plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Here, Jameson acknowledges that the plaintiffs' criticisms of the Sheriff's office were constitutionally protected, but that Jameson's comments would not have chilled an ordinary person from continuing to speak, and that the plaintiffs have provided no evidence or a retaliatory motive. They argue that qualified immunity shields Jameson from liability, because no authority exists which would signal any clear violation of a constitutional right. The court agrees.

Even assuming the truth of the plaintiffs' conclusory allegations, the court finds that they have failed to show that a reasonable person would likely be deterred from publicly speaking about the events of the animal rescue. The plaintiffs recite the law relating to summary judgment (Dkt. 56, at 2-6) and qualified immunity (*id*. at 6-7) without addressing at all the elements of their First Amendment claim, or explaining how the defendants are wrong in their arguments that the elements of such a claim are not present. Plaintiffs cite no case authority which would suggest that the alleged comments of Jameson would violate any constitutional rights.

Under Section 1983, state officials sued in their personal capacity for damages may raise the affirmative defense of qualified immunity. *A.M. v. Holmes*, 830 F.3d 1123, 1134

5

(10th Cir. 2016). To defeat qualified immunity, a plaintiff faces a "heavy two-part burden" of showing both that (1) the defendants violated a constitutional right, and (2) the "infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal." *Martinez v. Carr*, 479 F.3d 1292, 1294-95 (10th Cir. 2007). The defense in effect protects "all but the plainly incompetent or those who knowingly violate the law." *A.M.*, 830 F.3d at 1134-35 (internal citations and quotations omitted).

At qualified immunity's second step, courts should proceed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," taking account of "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Wilson v. City of Lafayette*, 510 F. App'x 775, 779 (10th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). *See also Saucier v. Katz*, 533 U.S. 194, 205 (2001).

To show a right is clearly established, the plaintiff must point "to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). The law is clearly established if "every reasonable official would have understood that what he" did violated the law. *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011).

In determining whether a right is clearly established, the Supreme Court has repeatedly cautioned courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks and citation omitted). "Although [the Supreme] Court's caselaw does not require a case

6

directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (internal quotation marks and citation omitted). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

A decision to afford an officer qualified immunity is almost always a question of law, to be decided by the court prior to trial. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217-18 (10th Cir. 2008). The protection afforded by qualified immunity applies to government officials whether their mistake is one of law or fact – or a mixed question of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court has discretion to address the requirements of a qualified immunity defense in any order. *Id*. at 236. The plaintiff's failure to establish either of the two requirements is fatal to his claim. *Id*. In determining whether the plaintiff has satisfied the two-pronged qualified immunity showing, the court ordinarily accepts the plaintiff's version of the facts. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

However, because the summary judgment stage is "beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). But if the non-movant proves there

7

is a factual dispute involving an issue "on which qualified immunity turns," summary judgment on the basis of qualified immunity is "inappropriate." *Harapat v. Vigil*, 676 F.Supp.2d 1250, 1266 (D.N.M. 2009) (citing *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988)).

The facts suggest that the plaintiffs initiated publicity regarding the removal of the dogs from the property. Jameson's comments reflect mild but accurate criticism of the plaintiffs, that Aris's removal of the dogs before law enforcement could arrive made any criminal investigation difficult. Even if the court assumes the truth of the Johnston affidavits that Aris might face *possible* criminal charges, this was simply a comment about a hypothetical outcome depending on further investigation. The Johnston affidavits do not allege that the plaintiffs were actually guilty of any offense, or indicate that the prosecution would occur. The plaintiffs concede (Uncontr. Fact ¶ 10) that the sheriff's office never actually investigated Aris, and she was never prosecuted.

Further, the conclusory allegations in the Johnston affidavits have to be weighed against the specific and uncontroverted evidence submitted by the defendants. The reporter in the KVIA-TV story followed Jameson's comments with the announcement that "Aris won't be charged."

The plaintiffs have cited no authority indicating a reasonable person would be deterred from further speaking by comments of the sort attributed to Jameson. *Cf. Phelan v. Laramie County Comm. Col. Bd. of Trustees*, 235 F.3d 1243, 1245 (10th Cir. 2000) (no First Amendment violation based on college board vote of censure). Nor have the plaintiffs supplied any reason to conclude that Jameson's comments were retaliatory in nature. Neither the Johnston affidavits nor the evidence submitted by the defendants suggest any

link between First Amendment activity by the plaintiffs and the mildly critical comments attributed to Jameson. There is nothing here which would show that such comments were "substantially motivated by a personal desire to retaliate" against Aris and her animal shelter. *See A.M. ex rel. Holmes*, 830 F.3d 1123, 1163 (10th Cir. 2016). *See also Stonecipher v. Valles*, 759 F.3d 1134 (10th Cir. 2014). *Cf. Lincoln v. Maketa*, 880 F.3d 533, 540-41 (10th Cir. 2018) (Sheriff who allegedly instituted criminal investigation of subordinate officer as retaliation was entitled to qualified immunity, where there was no evidence the investigation was "made public or that it resulted in humiliation, damage to reputation, or harm to his future employment prospects").

Retaliatory actions are actionable if they would chill a reasonable person of ordinary firmness from futher speech. This "is a vigorous standard," justified because "the nature of political debate is rough and tumble," and "Plaintiffs in public debates are expected to cure most misperceptions about themselves through their own speech and debate." *Eaton v. Meneley*, 379 F.3d 949, 956 (10th Cir. 2004). Thus, the law is not clearly established that communications of the type attributed to Jameson constitute unlawful, chilling retaliation. To the contrary, "courts in this circuit have found statements concerning the illegality or impropriety of a plaintiff's conduct insufficient, standing alone, to support a First Amendment retaliation claim." *Weise v. Colorado Springs*, 421 F.Supp.3d 1019, 1042-43 (D. Col. 2019) (citing cases). *See also Eaton*, 379 F.3d at 956 (quoting *Phelan*, 235 F.3d at 1248 (10th Cir. 2000) ("injury to one's reputation is not enough to defeat constitutional interests in furthering uninhibited, robust debate on public issues").

Aris was never actually prosecuted or even investigated over the incident. She has not attempted to show or quantify any actual damage to her reputation. There is no evidence that the Johnstons, or anyone else, believed Aris was guilty of any criminal conduct based upon the alleged television report. And, as noted above, it is uncontroverted that Jameson explicitly told KVIA-TV that Aris was not subject to prosecution. Plaintiffs make no effort to distinguish the cases such as *Phelan* and *Stonecipher* cited by defendants, and cite to no authority clearly establishing a First Amendment violation under similar circumstances. There is no evidence Jameson was motivated by a personal desire to retaliate against the plaintiffs. The court finds that the defendant Jameson is entitled to qualified immunity.

IT IS ACCORDINGLY ORDERED this 29th day of June, 2020, that the defendant's Motion for Summary Judgment (Dkt. 52) is hereby granted.

*J. Thomas Marten*
J. Thomas Marten, Judge